UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CHERYL BLACKBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-cv-00035-SEB-TAB |
| ) | |
| NANCY A. BERRYHILL Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S REQUEST FOR REMAND**

**I.    Introduction**

Plaintiff Cheryl Blackburn seeks remand of the Administrative Law Judge's decision denying her disability insurance benefits. Blackburn contests the ALJ's decision on several fronts. First, she argues that the ALJ failed to address conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*. Second, she challenges the ALJ's analysis of medical sources, arguing that he erred by failing to afford any source great or controlling weight, failing to afford controlling weight to Blackburn's treating physicians, and by substituting his own opinion in place of medical sources. Third, Blackburn presents a series of arguments asserting that the ALJ failed to adequately consider and discuss her impairments and the ALJ's own findings of psychological restrictions when determining her RFC. Unfortunately, several of Blackburn's fact-centered arguments are undermined by her many claims that the ALJ failed to consider factors that the record plainly shows the ALJ in fact considered. As explained below, Blackburn's request for remand [Filing No. 12] should be denied because her arguments fail to show error or harm that requires remand.

## II. Background

Blackburn sought disability insurance benefits alleging disability beginning on October 5, 2011. The Social Security Administration denied her request, and Blackburn requested a hearing. The SSA granted her a hearing before an ALJ, at which she was represented by an attorney. The ALJ issued a decision finding Blackburn was not disabled. Blackburn appealed the unfavorable decision within the SSA, but it affirmed the ALJ's decision. Blackburn brings this action seeking remand to the ALJ.

In his decision, the ALJ used the SSA's five-step sequential evaluation process and found at step four that Blackburn is capable of performing past work as a graphic coordinator and is, therefore, not disabled. The ALJ found Blackburn had severe impairments: "chemotherapy-induced neuropathy, migraines, vasculitis, deep venous thrombosis, depression, and anxiety." [Filing No. 7-2, at ECF p. 58, R. at 57.] In his residual functional capacity analysis, the ALJ found Blackburn had several limitations:

> [Blackburn] has the [RFC] to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a) except she must be afforded the opportunity to alternate between a standing and seated position at will without being off-task for more than 15% of the workday. She can only occasionally climb ladders, ropes, scaffolds, ramps, and stairs, can only occasionally balance, stoop, kneel, crouch, and crawl, and can only frequently engage in fingering, handling, and feeling activities. She must further avoid concentrated exposure to extreme heat, cold, and vibrations, must avoid concentrated exposure to fumes, odors, dusts, gases, other pulmonary irritants, and poorly ventilated areas, and must avoid all exposure to unprotected heights, the operation of motorized vehicles, and moving mechanical parts. [Blackburn] cannot engage in outdoor work, and must avoid concentrated exposure to bright lights. Moreover, she is limited to work requiring no more than detailed, but not complex, instructions in an environment free from fast-paced production requirements.

[*Id.* at ECF p. 62, R. at 61.] Based on this RFC and testimony from a vocational expert, the ALJ found that Blackburn was capable of returning to her previous employment as a graphic coordinator.

### III. Discussion

The Court reviews the ALJ's decision to determine whether it is supported by substantial evidence, i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). From that evidence, the ALJ must build a logical bridge to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). The Court's substantial-evidence review is deferential: it will not supplant the ALJ's conclusion for its own. *Summers*, 864 F.3d at 526.

#### 1. Conflict with Dictionary of Occupational Titles

Blackburn argues that the ALJ's decision is not supported by substantial evidence because the VE discussed being off task 15% of the work day due to a need for a sit/stand option and absences from work without indicating that the *DOT* and the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("*SCO*") do not address these topics. Blackburn argues that the VE's testimony thereby conflicts with the *DOT* and *SCO*. Based on this, Blackburn concludes that because the ALJ failed to ask for and receive a reasonable explanation from the VE for the conflict, the ALJ cannot have relied on the VE, and the decision must be remanded.

Contrary to the Commissioner's assertion, there is a conflict under SSR 00-4p when the VE testifies to something that is not included in the *DOT*. *Morales v. Acting Comm'r. of Soc. Sec. Admin.*, 1:17-CV-21-TLS, 2017 WL 6380180, at *3 (N.D. Ind. Dec. 14, 2017); *Addams v. Berryhill*, 17-CV-151-JPG-CJP, 2017 WL 4518347, at *5 (S.D. Ill. Oct. 10, 2017); *Loellke v. Berryhill*, 16-CV-00799-JPG-CJP, 2017 WL 3616691, at *5 (S.D. Ill. Aug. 23, 2017); *Spriggs v. Colvin*, 15-CV-1117-JPG-CJP, 2016 WL 7440809, at *5 (S.D. Ill. Dec. 27, 2016).

However, whether the conflict is "apparent" is crucial to this matter. "[T]he ALJ has an 'affirmative responsibility' to ask if the VE's testimony conflicts with the *DOT*, and if there is an 'apparent conflict,' the ALJ must obtain a reasonable explanation." *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704). On the other hand, when the conflict arises because the topic is not in the *DOT*, this conflict is latent rather than apparent, so "ALJs needn't resolve it at the hearing if no one notices it." *Teskey v. Astrue*, 1:10-CV-00758-JMS, 2011 WL 1636924, at *8 (S.D. Ind. Apr. 29, 2011). If the ALJ acknowledges an otherwise latent conflict, the conflict is then apparent, and the conflict must be resolved. *Garcia v. Astrnue*, 1:11-CV-00165, 2012 WL 3137890, at *13 (N.D. Ind. Aug. 1, 2012).

With regard to the sit/stand option, the transcript is clear; the ALJ both acknowledged the conflict and resolved it. The ALJ noted that the *DOT*'s definition of "sedentary" is sitting for six hours and standing or walking for up to two hours in an eight-hour workday. [Filing No. 7-3, at ECF p. 42, R. at 118.] The ALJ presented the VE a hypothetical which required the person to be able to sit or stand at will without being off task more than 15% of the day. [*Id.* at ECF p. 40, R. at 116.] Apparently recognizing the conflict, the VE responded that a person so limited would not be able to perform a full range of sedentary work as defined by the *DOT*. [*Id.* at ECF p. 41, R. at 117.] The ALJ clarified his hypothetical asking, rather than the *DOT* definition of sedentary, if a person was "allowed to sit and stand at will without being off task more than 15 percent," would she be able to perform Blackburn's past work as a graphics coordinator. [*Id.* at ECF p. 42, R. at 118.] The VE responded, "Yeah, I think I understand what you've just done. What you've done is you've altered the [*DOT*] definition of sedentary by the sitting and standing characteristic, and I believe she'd still be able to perform her prior employment with that limitation." [*Id.*] The ALJ later confirmed, "And again, is your testimony consistent with the

4

*DOT* and the *SCO*?" [*Id.* at ECF p. 43, R. at 119.] The VE replied, "Yes, your honor, it is, other than in characteristics related to sedentary work by definition, . . . but that alterization [phonetic] I think would still qualify for sedentary work." [*Id.* (alteration in original).] Thus, the ALJ acknowledged and resolved the conflict.

Unlike the sit/stand discussion, the latent conflict between the *DOT* and the VE's testimony regarding absences and the amount of time a person could be off task seemingly went unnoticed. Though neither standard is in the *DOT*, the ALJ and the VE discussed absences and used 15% as the total amount of a workday that she could be off task but still considered employable. At the hearing, neither the ALJ, the VE, nor Blackburn's counsel noted this conflict with the *DOT*. Thus, the ALJ was not required to resolve this unnoticed latent conflict. Further, Blackburn's counsel did not object to the VE's testimony and did not question the VE on this point when he had the opportunity. ALJs are permitted to rely on unchallenged opinion testimony from VEs. *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). Therefore, the ALJ was permitted to rely on the VE's unchallenged opinion, and doing so does not render his opinion unsupported by substantial evidence.

### 2. Weighing Medical Sources

Blackburn argues the ALJ erred at step four by failing to assign great or controlling weight to any medical source. Blackburn also argues the ALJ erred in assigning Dr. Douglas Flora's, Dr. Vinod Krishnan's, and Dr. Michael Dragan's opinions less than controlling weight, and that the ALJ substituted his own lay opinion for those of the medical sources. Blackburn fails to show the ALJ's weighing of medical sources requires remand or that he "played doctor."

Blackburn points out that the ALJ considered opinions from eight medical sources but declined to give any source great or controlling weight. Of the eight, only Dr. Shuyan Wang

received "some weight," while the ALJ assigned the others only "little weight." Blackburn argues this failure renders the ALJ's RFC analysis unsupported, so his decision must be remanded. Blackburn asks, "if the ALJ did not give controlling weight or great weight to any source, from what evidence did he glean his opinion?" and "If the ALJ gives no more than 'some' weight to all of the medical opinion[s] in the record, upon what is he basing his opinion?" [Filing No. 21, at ECF p. 5.]

    Blackburn's premise is flawed, and these questions show a misunderstanding of the nature of an RFC assessment. ALJs are not required to pick one of the medical sources and assign it great or controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between opinions of any of the claimant's physicians"). RFCs and medical sources are distinct, and the ALJ—not a medical source—is responsible for determining a claimant's RFC. SSR 96-5P, 1996 WL 374183, at *4; 20 C.F.R. § 404.1546(c); 20 C.F.R. § 416.946(c).

> The [RFC] assessment is based upon the consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5P, 1996 WL 374183, at *5. Further, ALJs can rely on sources they assign less than great or controlling evidentiary weight. *E.g.*, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("A decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering it, . . . and the ALJ may still look to the opinion after opting to afford it less evidentiary weight."). Thus, merely showing that the ALJ failed to assign great or controlling weight to a medical source is insufficient to show the RFC determination is not supported by

6

substantial evidence because the ALJ can assemble the claimant's RFC piecemeal to account for all the evidence.

Blackburn additionally argues that the ALJ should have given controlling weight to the opinions of Drs. Flora, Krishnan, and Dragan.[1] Blackburn argues that the treating physicians' opinions are consistent, and the ALJ offered insufficient reasons to discount them. The Commissioner responds that the opinions intruded on the province of the ALJ, consistency alone is not enough, and the ALJ cited ample evidence to support discounting the opinions. Though Blackburn shows that the opinions are consistent with each other, she fails to show that they are supported by substantial evidence and are not inconsistent with the other evidence on record.

Generally, an ALJ's decision to credit or reject evidence of a disability is conclusive and will not be disturbed if the ALJ "minimally articulate[s] his reasons." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, a "treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Id.* Nonetheless, this deference is not extended to a treating physician's finding that a claimant is "disabled" or "unable to work" because this task is reserved to the ALJ. *Id.*; 20 C.F.R. § 404.1527(d)(1)–(2).

Drs. Flora and Krishnan each opined that Blackburn's pain from neuropathy was "disabling." [Filing No. 7-2, at ECF p. 69, R. at 68.] Regarding Dr. Flora, the ALJ discounted his opinions that Blackburn's neuropathy was "quite pronounced and […] disabling," and "it was 'nearly impossible for her to participate in any work activities.'" [*Id.* at ECF p. 69, R. at 68

---

[1] Blackburn notes that the ALJ gave little weight to Drs. Ruiz, Brill, Neville, and Horton, but admits that the assigned weight was proper. [Filing No. 12, at ECF p. 11 (Ruiz and Brill); Filing No. 21, at ECF p. 5 (Neville and Horton).] Blackburn also notes that the ALJ gave some weight to Dr. Wang, but does not make any argument regarding whether that weight was proper. [Filing No. 12, at ECF p. 14; Filing No. 21, at ECF p. 4.]

7

(alteration in original).] Similarly, the ALJ discounted Dr. Krishnan's opinion that Blackburn's "neuropathic pain and fatigue were each 'disabling to the extent that [they] would prevent [her] from working full time even at a sedentary position.'" [*Id.* at ECF p. 69, R. at 68.] These opinions are not entitled to the greater deference given to treating physicians' opinions because they invade the province of the ALJ. Blackburn fails to show the ALJ erred in discounting them.

For both Dr. Flora and Dr. Krishnan, the ALJ properly discredited these findings of disabling pain in part because they were not based on objective testing, but rather on Blackburn's own subjective complaints. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) ("A treating doctor's opinion may be properly discounted . . . if it is based upon the claimant's subjective complaints rather than medical evidence."). Thus, Blackburn's citations to Dr. Flora's and Dr. Krishnan's records of Blackburn discussing her pain (including Dr. Krishnan's subjective 1–10 pain scale) are unpersuasive. [Filing No. 12, at ECF pp. 11–13.] Further, the only objective testing Blackburn cites found reduced sensation, rather than pain. The ALJ addressed Blackburn's reduced sensation, and the most recent tests showed normal sensation. [Filing No. 7-2, at ECF pp. 65–66, 68, R. at 64–65, 67; Filing No. 7-12, at ECF pp. 45, 48, 55, R. at 756, 759, 766.]

The ALJ cast further doubt on the overall reliability of the opinions of Drs. Flora, Krishnan, and Dragan by comparing their conclusions related to Blackburn's ability to sit, stand, walk, squat, and manipulate objects with her hands with other record evidence. [Filing No. 7-2, at ECF pp. 69–70, R. at 68–69.] Drs. Flora, Krishnan, and Dragan each concluded that Blackburn could stand, sit, or walk for no more than one hour at a time and two hours each in total during an eight-hour workday, and that Blackburn could not climb, balance, stoop, kneel, crouch, crawl, or squat. [Filing No. 7-10, at ECF pp. 74–75, R. at 597–98 (Dr. Flora); Filing No.

8

7-12, at ECF pp. 37–38, R. at 748–49 (Dr. Krishnan); Filing No. 7-11, at ECF pp. 30–31, R. at 655–56 (Dr. Dragan).] And Dr. Krishnan further concluded that Blackburn could never use her hands for "simple grasping," "pushing and pulling," or "fine manipulation." [Filing No. 7-12, at ECF p. 37, R. at 748.]

The ALJ contrasted these opinions with other record evidence, including Blackburn's own statements. The ALJ noted that Blackburn testified that she took two-hour shopping trips, washed dishes, did laundry, prepared simple meals, and did other activities like cycling, which contradicted the doctors' limitations regarding time on her feet and using her hands. [Filing No. 7-2, at ECF pp. 60–61, 67, R. at 59–60, 66.] This contradiction between Blackburn's testimony and the doctor's conclusions is especially noteworthy given that the opinions are based on Blackburn's subjective reports.

The ALJ's decision points to additional contradictions. Earlier in the decision, and referenced in his discussion of the weight given to Dr. Flora, the ALJ pointed to Dr. Wang's findings that Blackburn retained intact strength and reflexes, the ability to heel-toe walk, tandem walk, and squat.[2] [Id. at ECF pp. 68–69, R. at 67–68 (citing Filing No. 7-10, at ECF pp. 66–72, R. at 589–95).] Further, the ALJ noted internal inconsistency in Dr. Krishnan's records, which showed normal strength, reflexes, coordination, and gait, no significant numbness, improved arthralgia (joint pain), significant improvement in fatigue, and a consistent ability to squat. [Id. at ECF p. 70, R. at 69; Filing No. 7-11, at pp. 8, 13, R. at 633, 638; Filing No. 7-12, at ECF pp.

---

[2] Even if the ALJ did not perfectly juxtapose the conflicting evidence, he referenced the inconsistency and fully discussed the particular facts elsewhere in the decision. The failure to repeat discussions does not doom the ALJ's decision because the Court reads it as a whole, giving it "a commonsensical reading rather than nitpicking it." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("it would be a needless formality to have the ALJ repeat substantially similar factual analyses").

45–47, R. at 756–58.] These contradictions adequately support the ALJ's decision to afford the opinions little weight.

Contrary to Blackburn's assertion, and as the above discussion makes clear, the ALJ did not discount Dr. Krishnan's and Dr. Dragan's opinions solely because they were "checkbox" opinions. Rather, the ALJ properly considered the fact that the opinions were "checkbox" as one factor among several that tilted against assigning greater weight to their opinions. *See Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) (checkbox forms are "the sort of medical evaluation this court has discounted in the past") (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)).

Blackburn also argues that the ALJ failed to mention Drs. Brown and Webb, and that their findings were consistent with Dr. Flora's. Contrary to Blackburn's assertion, the ALJ discussed Dr. Brown's opinion, finding that it showed Blackburn's pain was improving with treatment. [Filing No. 7-2, at ECF p. 65, R. at 64 (citing Filing No. 7-8, at ECF pp. 95, 98, R. at 432, 435).] Dr. Webb was merely mentioned in Dr. Flora's report and did not offer an opinion in this matter. [*See* Filing No. 7-1 (exhibit index listing all physician opinions).] Blackburn fails to explain how Dr. Webb's opinion aligns with or supports Dr. Flora's. Further, ALJs are not required to discuss every piece of evidence. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Thus, the ALJ's failure to discuss a source within a source was not error. In all, Blackburn fails to show the ALJ should have assigned controlling weight to Dr. Flora's, Dr. Krishnan's, or Dr. Dragan's opinions.

Blackburn next argues that the ALJ "played doctor" by substituting his own lay opinion for that of the medical sources. In rejecting a physician's opinion, an "ALJ may not substitute his own judgment for a physician's opinion without relying on medical evidence or authority in

10

the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). "The cases in which we have concluded that an ALJ 'played doctor' are ones in which the ALJ ignored relevant evidence and substituted her own judgment." *Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (distinguishing between cases where the court found the ALJ was or was not "playing doctor").

The support the ALJ provides for his or her decision is crucial. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). "Being unable to discern how—apart from substituting his own judgment for that of the medical witnesses—the ALJ reached his determination regarding the degree of [the claimant's] impairments, we must reverse and remand for further proceedings." *Id.* Here, the ALJ adequately supported his decision with citations to the record and medical sources, and Blackburn fails to point to any unsupported assertion or conclusion in the ALJ's RFC analysis. As discussed above, the ALJ relied on Dr. Wang's opinion regarding Blackburn's limited ability to stand, sit, or walk for prolonged periods and concluded that Blackburn was limited to sedentary work that allows her to move between sitting and standing. He also cited Drs. Flora, Krishnan, and Dragan, though he assigned them little weight.

The cases Blackburn cites, in which the ALJ "played doctor," are distinguishable. In *Rohan*, 98 F.3d at 970–71, the ALJ "indulged his own lay view of depression," ignoring the claimant's treating physician and consulting physicians, because the ALJ thought that running a small business was "incompatible" with a diagnosis of major depression. In *Boiles*, 395 F.3d at 425, the claimant suffered from pseudoseizures. The ALJ ignored testimony that a negative EEG was normal for the claimant's condition, relied on a lack of emergency room visits even though a physician testified that going to the ER served no purpose, and, despite much evidence, wrongly asserted that there was "no evidence" the claimant's daytime functioning was impaired due to nocturnal pseudoseizures. *Id.* at 425–26. In *Clifford*, 227 F.3d at 870, the ALJ discounted the

11

claimant's treating physician's testimony that degenerative knee arthritis severely limited the claimant's ability to walk because it was inconsistent with the claimant's testimony, but the ALJ failed to show how the testimony was inconsistent. Further, the ALJ erroneously determined the claimant's assertions of debilitating pain were not credible. *Id.* at 871. Given that the ALJ properly weighed the opinions from Drs. Flora, Krishnan, and Dragan, Blackburn fails to point to an instance in the ALJ's decision where he similarly substituted his own unsupported opinion for that of a medical source.

In sum, the ALJ did not err in failing to give great or controlling weight to any medical source. Further, the ALJ did not err in weighing the opinions of Drs. Flora, Krishnan, or Dragan and did not "play doctor" by substituting his opinion for that of the medical sources.

### 3. Residual Functional Capacity Determination

Blackburn argues that the ALJ failed to consider all of her impairments in his analysis of her RFC.[3] The ALJ must fully consider the combination of all impairments—both severe and non-severe—when determining a claimant's RFC. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). "[T]he reviewing court should not have to speculate as to the basis for the RFC limitations." *Moore v. Colvin*, 743 F.3d 1118, 1127–28 (7th Cir. 2014). However, "an ALJ's failure to explicitly consider an applicant's [impairment] is harmless if the applicant did not explain how [the impairment] hampers her ability to work." *Stepp v. Colvin*, 795 F.3d 711, 720

---

[3] Blackburn separates her argument into multiple sections. In the heading for the first section, Blackburn says the ALJ erred at step two. [Filing No. 12, at ECF p. 15; Filing No. 21, at ECF p. 7.] However, the text of her briefing specifically points to the ALJ's RFC analysis. [Filing No. 12, at ECF p. 16–17; Filing No. 21, at ECF p. 9.] Further, the sources she cites each pertain to the RFC analysis. [Filing No. 12, at ECF pp. 16–17 (citing 20 C.F.R. § 404.1529(c)(1) and *Moore v. Colvin*, 743 F.3d 1118, 1127–28 (7th Cir. 2014))]. Therefore, Blackburn's arguments are analyzed as challenging the ALJ's RFC analysis and determination.

(quoting *Dornseif v. Astrue*, 499 F. App'x 598, 600 (7th Cir. 2013)).[4]  Further, at step four, claimants have the burden to prove disability.  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

To begin, Blackburn argues the ALJ failed to discuss several impairments that the ALJ in fact addressed.

- Back pain: The ALJ discussed Blackburn's neuropathy-related back pain in connection with her lower extremity neuropathy.  [Filing No. 7-2, at ECF p. 65, R. at 64.]  In her reply brief, and for the first time, Blackburn points to MRI evidence of bulging discs and arthropathy.  [Filing No. 21, at ECF pp. 8–9 (citing Filing No. 7-10, at ECF p. 87, R. at 610).]  However, "[i]t is well settled law in this Circuit that arguments raised for the first time in a reply brief are waived."  *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005).  Therefore, Blackburn waived her argument that the ALJ failed to consider an additional source and a different kind of back pain.

- Concentration and slower cognitive processing: The ALJ discussed Blackburn's alleged "difficulties in concentration occasioned by fatigue and insomnia," finding the evidence "fall[s] short of confirming her allegations."  [Filing No. 7-2, at ECF p. 67, R. at 66.]

- Deep vein thrombosis: The ALJ discussed Blackburn's diagnosis and noted that at the most recent checkup, there was "no evidence of [DVT]."  [*Id.* at ECF pp. 63–65, R. at 62–64].  The ALJ also noted Blackburn took Coumadin and Lovenox, but she "cit[ed] few symptoms related to this impairment."  [*Id.* at ECF p. 63, R. at 62.]

- Breast cancer, bilateral mastectomies, and reconstructive surgery:  The ALJ discussed Blackburn's breast cancer and the impact of her bilateral mastectomies and reconstructive surgery on her ability to use her arms and hands.  [*Id.* at ECF p. 66, R. at 65.]  The ALJ further addressed Drs. Krishnan and Dragan's opinions that Blackburn could not use her hands, concluding that the limitations in their opinions were excessive.  [*Id.* at ECF p. 70, R. at 69.]

- Insomnia: The ALJ noted that, despite reports of insomnia, Blackburn was "sleeping well" and had significant improvement in her fatigue.  [*Id.* at ECF pp. 67, 70–71, R. at 66, 69–70.]

- Lymphedema and edema[5]: The ALJ discussed Blackburn's lymphedema, noting that her swelling was no more than "very mild" as far back as March 2012.  [Filing No. 7-2, at ECF p. 64, R. at 63.]  Further, though the ALJ failed to decide whether the impairment was severe or non-severe, this error was of no consequence because the ALJ found at

---

[4] The impairment at issue in both *Stepp* and *Dornseif* was obesity.  *Id.*  However, there is no reason to believe the principle expressed is limited to that one impairment.

[5] Blackburn erroneously discusses lymphedema and edema as two separate conditions.  Both terms were used to refer to the swelling in her left leg.  [*E.g.* Filing No. 7-8, at ECF p. 50, R. at 387.]

13

> least one severe impairment and considered the impact of Blackburn's lymphedema on her RFC. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (the ALJ must consider "the entire constellation of ailments" regardless of whether severe or non-severe) (citing 20 C.F.R. § 404.1523(c));  20 C.F.R. § 404.1520(a)(4)(ii) (the ALJ stops at step two only if there are no severe impairments).

Blackburn fails to show that the ALJ's discussion of these alleged impairments in his RFC analysis was inadequate.

Blackburn's arguments regarding the other impairments are also unpersuasive. Blackburn challenges the ALJ's lack of discussion of her eyelid fasciculations, gynecological impairments (hysterectomy, post-menopausal bleeding, abnormal uterine bleeding, uterine polyp, and ovarian cyst), and hypertension. Blackburn argues that these impairments could affect her ability to work and asks the Court to remand so that the ALJ can include them in his RFC assessment. Blackburn supports her argument by listing hypothetical impacts the conditions could have on her ability to work. However, Blackburn fails to show evidence in the record to support these hypotheticals, and this Court's review of the record did not find any evidence of an impact on her ability to work.

Blackburn posits that her eyelid fasciculations (twitching) could cause problems with her near and far visual acuity. However, she failed to allege a visual impairment when making her benefits claim, did not alert the ALJ to the issue at her hearing, and failed to provide any evidence that the condition actually caused any visual limitations. Without any evidence that her eyelid fasiculations affected her RFC, any error in failing to note the condition in the RFC analysis was harmless.

Regarding her gynecological impairments, Blackburn claims that bleeding and pain could impact her ability to work without interruption. However, Blackburn cites, and there appears to be, no record evidence of bleeding, pain, or related problems following the December 12, 2013, surgery to remove uterine tissue and both ovaries. [Filing No. 7-11, at ECF p. 86, R. at 711.] In

his step three analysis, the ALJ noted, "Attendant records confirm the unremarkable nature of this procedure, as well as its lack of long-term work-related complications." [Filing No. 7-2, at ECF p. 59, R. at 58.] Any error in failing to re-address the impact of Blackburn's gynecological impairments in his analysis of her RFC was harmless because the record shows there was no impact after the procedure.

Similarly, Blackburn postulates that her hypertension medication could require her to take additional restroom breaks. Again, Blackburn cites no evidence that she actually experienced this side effect. In contrast, the ALJ noted at step two that Blackburn "registered no complaints regarding [her hypertension]," and that the record showed it was "'relatively stable' and 'well controlled.'" [Filing No. 7-2, at ECF p. 59, R. at 58 (quoting Filing No. 7-9, at ECF p. 18, R. at 460, Filing No. 7-11, at ECF p. 35, R. at 660).] There would be no point to remanding the ALJ's decision simply for him to address the fact that there is no support for any additional limitations in Blackburn's RFC due to her hypertension.

Blackburn also argues, but only in her opening brief, that the ALJ failed to fully account for her sensitivity to sound and absences due to migraines and her alleged inability to kneel. The Commissioner responds that the omission is harmless because the *DOT* and *SCO* define Blackburn's previous work as a graphic coordinator as a position with only moderate noise and no kneeling requirements. Notably, Blackburn abandons her arguments in her reply brief. [Filing No. 21, at ECF pp. 11–13.] Blackburn fails to persuade that the omission requires remand.

Blackburn next argues that the ALJ failed to accommodate for his own earlier findings in his RFC assessment. The ALJ found that Blackburn had psychological limitations that produced mild restrictions in activities of daily living, a mild restriction in social functioning, and

15

moderate restrictions in concentration, persistence, and pace. In the RFC section of the decision, the ALJ did not discuss Blackburn's mild daily living or social functioning restrictions and only briefly discussed her moderate concentration, persistence, and pace restrictions. The Commissioner argues that Blackburn's argument is undeveloped, and therefore forfeited, citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). While her argument is underdeveloped, it is not so skeletal as to be unfollowable. *See id.*

Nonetheless, Blackburn's argument is unpersuasive. With little guiding exposition, Blackburn submits a block quote from *Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013), for the proposition that the ALJ was required to discuss Blackburn's limitations in the RFC section of his decision. [Filing No. 12, at ECF pp. 20–21.] However, *Underwood* is distinguishable. There, the ALJ noted that the claimant had mild restrictions in concentration, persistence, and pace, "and then it simply vanished from the remainder of the decision." *Underwood*, 2013 WL 2420874, at *2. Here, Blackburn's moderate restrictions in concentration, persistence, and pace did not vanish from the decision after their only mention. Rather, the ALJ discussed Blackburn's moderate restrictions, finding she was limited to "work requiring no more than detailed, but not complex, instructions in an environment free from fast-paced production requirements." [Filing No. 7-2, at ECF p. 68, R. at 67.] Further, the ALJ discussed the issue more fully earlier in the decision, [*Id.* at ECF p. 61, R. at 60] and there was no need for him to repeat it. *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) (ALJs need not repeat substantially similar analyses).

Blackburn further contends that the ALJ should have additionally limited her to unskilled work, due to her moderate difficulties in concentration, persistence, and pace. However, in support Blackburn only quotes *Stewart v. Astrue*, 561 F.3d 679, 684–85 (7th Cir. 2009), where it

16

discussed the hypotheticals ALJs pose to vocational experts regarding limitations in concentration, persistence, and pace. [Filing No. 12, at ECF p. 21–22.] *Stewart* does not support Blackburn's position that she should have been limited to unskilled work, and Blackburn does not challenge the ALJ's hypothetical to the vocational expert. As a result, Blackburn's argument is unpersuasive.

Reading the decision as a whole and commonsensically, the ALJ's discussion of Blackburn's mild psychological limitations was sufficient, and the ALJ's failure to discuss the limitations specifically in the RFC section of the decision was harmless. As the Commissioner points out, the ALJ's earlier discussion of Blackburn's mild restrictions make it clear that the ALJ found the limitations to have no appreciable impact. Regarding Blackburn's psychological restrictions to her daily living, the ALJ noted:

> Initially, the undersigned notes [Blackburn's] own suggestion that her physical problems—as opposed to any mental restrictions—form the basis for her limited involvement in household chores. The claimant continues to prepare her own simple meals and snacks on a daily basis, and admittedly engages in light household chores that include dishes and laundry without encouragement or assistance. Outside of her home, the claimant remains able to drive a car and walk to her destinations, and freely endorses the ability to travel alone. She regularly shops for such items as books, food, and movies, and advises that she can do so for up to two hours at a time. Additional factors that include her mental and emotional abilities to manage her own finances, pay bills, and handle her checking and savings accounts offer further indication of her mild restriction in this area of functioning.

[Filing No. 7-2, at ECF p. 60, R. at 59 (internal citations omitted).] Regarding social functioning, the ALJ found:

> While she reports some degree of irritability and psychomotor agitation, she nevertheless endorses an enjoyment of being around others. To this end, she cites no difficulties in getting along with family, friends, neighbors, or authority figures, and advises that she has never been terminated from past employment for interpersonal conflicts. The claimant frequently visits with her mother and speaks with friends by telephone on a regular basis, and remains further involved in the affairs of others via such resources as Skype, daily e-mails, and occasional written

> correspondence.  Furthermore, she reports ongoing attendance at church and bible study groups held at her neighbor's home.

[*Id.* at ECF pp. 60–61, R. at 59–60 (internal citations omitted).]  Thus, the ALJ's discussions highlighted the things Blackburn retained the ability to do, and neither the ALJ nor Blackburn point to evidence that suggests an impact on her ability to work.  Without some evidence of an impact, the ALJ's failure to expressly note the mild limitations in his discussion of Blackburn's RFC was harmless.

Therefore, Blackburn fails to show the ALJ reversibly erred in determining her RFC.

### IV. Conclusion

Blackburn's request for remand [Filing No. 12] should be denied because her various arguments fail to show error or harm with regard to the VE's testimony, the medical sources, or the RFC analysis.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Absent a showing of good cause, failure to file timely objections within fourteen days after service shall constitute a waiver of subsequent review.

Date: 03/15/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.